United States District Court
Southern District of Texas

**ENTERED**

January 29, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD GONZALEZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.: 4:20-cv-00372 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Gonzalez filed the present action under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying his request for supplemental security income. Gonzalez and the Commissioner filed cross-motions for summary judgment. ECF 11, 13. Having considered the parties' filings, the record, and the law, Gonzalez's Motion (ECF 11) is **DENIED,** the Commissioner's Motion (ECF 13) is **GRANTED,** and the final decision of the Commissioner is **AFFIRMED**.[1]

### I. Background

**1. Procedural History**

Gonzalez filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income on July 20, 2017**.** Tr. 11, 184-196. Following the denial of his applications and subsequent request for reconsideration, Gonzalez requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 124-26. During the November 27, 2018 hearing

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including entry of final judgment. ECF 9.

before the ALJ, Gonzalez amended his disability onset date to October 31, 2018, effectively withdrawing his Title II disability benefits claim.[2]  Tr. 11, 27, 48.  Therefore, only the denial of his application under Title XVI is at issue in this case.

Gonzalez and a vocational expert testified at the hearing.  Tr. 24-49.  The ALJ issued a decision finding that, from the date of alleged onset of disability (October 31, 2018) through the date of the decision (February 14, 2019), Gonzalez was not disabled within the meaning of the Social Security Act.  Tr. 11-18.  The Appeals Council denied review on November 14, 2019 and the ALJ's decision became the final decision of the Commissioner.  Tr. 1; *see* 20 C.F.R. §§ 404.981, 416.1481.

## 2.  Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard and (2) whether the Commissioner's decision is supported by substantial evidence.  *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted).  When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions de novo, or substitute its own judgment for that of the Commissioner.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Id*.

## 3.  Disability Determination Standards

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

---

[2] Gonzalez's date last insured for Title II disability insurance benefits was December 31, 2012.  Tr. 11, 48.

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ must follow a five-step sequential

analysis to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

At the first step, the ALJ decides whether the claimant is currently working or "doing

substantial gainful activity."  *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the claimant is

not disabled.  At the second step, the ALJ must determine whether the claimant has a severe

impairment.  *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant's impairment does not

have a de minimis impact on her ability to work, she is not disabled.  *Salmond v. Berryhill*, 892

F.3d 812, 817 (5th Cir. 2018).  The third step of the sequential analysis requires the ALJ to

determine whether the claimant's severe impairment meets or medically equals one of the listings

in the regulation known as Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20

C.F.R. pt. 404, subpt. p, app. 1.  If so, the claimant is disabled.  If not, the ALJ must determine the

claimant's "residual functional capacity" (RFC).  "The RFC is the individual's ability to do

physical and mental tasks on a sustained basis despite limitations from her impairments."  *Giles v.*

*Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011).  At step four, the ALJ determines whether the

claimant's RFC permits her to perform her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv),

416.920(a)(4)(iv).  If the answer is no, the ALJ determines at step five whether the claimant can

perform other work that exists in the national economy.  *Fraga v. Bowen*, 810 F.2d 1296, 1304

(5th Cir. 1987).  The claimant bears the burden to prove disability at steps one through four, but

the burden shifts to the Commissioner at step five.  *Newton v. Apfel*, 209 F.3d 448, 452-53 (5th

Cir. 2000).

### 4.  The ALJ's Decision

The ALJ performed the standard five-step sequential analysis, finding Gonzalez had not

engaged in substantial gainful activity since his alleged onset date of October 31, 2018 and had

the severe impairments of "left Achilles ankle rupture, history of bilateral hip arthritis, history of low back arthritis, and history of right hand carpal tunnel syndrome." Tr. 13.  The ALJ also noted Gonzalez's non-severe mental impairments of depression, post-traumatic stress disorder ("PTSD"), and generalized anxiety disorder.  *Id.*  The ALJ determined at step three that none of Gonzalez's impairments, alone or in combination, met or equaled the severity of one of the listed impairments in Appendix 1.  Tr. 15.  The ALJ found Gonzalez has the RFC to perform light work

> except he can occasionally climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl.

*Id*.  Based on the medical records, opinions, and testimony of the vocational expert, the ALJ determined Gonzalez can perform his past relevant work as a small business owner.  Tr. 17.  For that reason, the ALJ concluded Gonzalez had not been under a disability from October 31, 2018 through the date of her decision.  *Id*.

## II. Analysis

Gonzalez argues the ALJ's RFC determination is not supported by substantial evidence because she did not include limitations to accommodate for carpal tunnel syndrome despite having found it to be a severe impairment at step 2 of the sequential analysis.  ECF 11 at 5-8.  As always, the Court's inquiry is limited to a determination of whether there is substantial evidence in the record to support the ALJ's findings and whether the proper legal standards have been applied.  *See Maharajh v. Barnhart*, 424 F. Supp. 2d 915, 925 (S.D. Tex. 2006) (citations omitted).

### 1.  The ALJ's RFC determination is supported by substantial evidence.

The "RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)).  In assessing Gonzalez's RFC, the ALJ properly considered Gonzalez's subjective complaints and

symptoms, the objective medical record, and the medical opinions given by the state agency consultants in the record.

**Gonzalez's Subjective Complaints and Symptoms.**   The ALJ is required to make an affirmative finding regarding a claimant's subjective complaints and her finding is entitled to deference.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted); *Lewis v. Barnhart*, 460 F. Sipp. 2d 771, 785 (S.D. Tex. 2006) (citations omitted).  During the disability hearing, Gonzalez testified that he uses braces to alleviate the carpal tunnel syndrome in his right hand.  Tr. 27.  He is left-hand dominant.  *Id.*  At the time of the hearing, Gonzalez testified he was driving around two or three hours per day for Uber.  Tr. 30.  He testified he was unable to drive for longer periods because he would develop numbness in his hands after holding the steering wheel for too long.  *Id.*

The ALJ's written decision makes clear she considered Gonzalez's statements about his symptoms and subjective complaints, but found they were not entirely consistent with the objective medical record, which is discussed below, and other evidence in the record.  Tr. 15.  For example, the ALJ pointed out that Gonzalez did not seek medical treatment for carpal tunnel syndrome or any other impairment during the relevant period, October 31, 2018 through February 14, 2019.  Tr. 15-16.  The ALJ also pointed out that Gonzalez's allegations regarding the severity of his impairments are inconsistent with his activities of daily living.  Tr. 17.

**The Objective Medical Record.**  Gonzalez consistently reported carpal tunnel syndrome as part of his medical history (Tr. 703, 953, 693), but his medical records show he did not seek treatment for symptoms related to carpal tunnel syndrome until May 2018.  On May 2, 2018, a doctor at the Houston VA clinic assessed "possible" right hand carpal tunnel syndrome and referred him to an occupational therapist.  Tr. 1176-77.  He was seen by an occupational therapist

on May 9, 2018.  Tr. 1012.  Gonzalez stated his symptoms affected his ability to hold a telephone and reach overhead but that he was independent with respect to his activities of daily living.  Tr. 1012-13.  He did not mention any other limitations in his activities.  During his May 9, 2018 examination, Gonzalez had a normal range of motion in his wrists but showed some symptoms "consistent with" carpal tunnel syndrome.  *Id.*  The occupational therapist issued a wrist brace to be worn at night for treatment of his symptoms.  *Id.*  In August 2018, Gonzalez was seen again at the VA clinic for right thumb pain.  Tr. 1106.  Gonzalez did not seek treatment specifically for carpal tunnel syndrome at this visit but reported a history of carpal tunnel syndrome for which he was using a night brace.  Tr. 1109.  In September 2018, Gonzalez still complained of issues with his right hand and raised concern about the effectiveness of his wrist braces, but reported he was independent with his activities of daily living.  Tr. 983.  His range of motion was within normal limits, but the examining physician assessed him with "possible carpal tunnel syndrome" and referred him to occupational therapy for a home exercise plan, pain control methods, and braces.  Tr. 986.  At this time, Gonzalez's physician "anticipate[d] that [Gonzalez] will improve after the above interventions."  *Id.*  A few days later, a different physician assessed Gonzalez with "likely carpal tunnel syndrome" and instructed him to complete an electromyelogram and nerve conduction study.  Tr. 990.  No results from the recommended tests are included in the record.  *See* Tr. 28 (counsel indicated at hearing that Gonzalez was "going to undergo a[n] EMG.").  Again, Gonzalez was simply given additional braces and instructed to treat his pain with Ibuprofen as needed.  Tr. 990.  On September 27, 2018, Gonzalez saw an occupational therapist once more and complained of right hand pain and decreased grip strength due to thumb pain.  Tr. 976-77.  Gonzalez was again issued braces and assessed as having good rehabilitation potential.  Tr. 977.  Gonzalez has not sought to update the record with medical records dated after September 2018.

No physician ever conclusively diagnosed Gonzalez with carpal tunnel syndrome and no physician ever imposed limitations on his activities due to carpal tunnel syndrome.  The medical records establish that Gonzalez received only conservative treatment such as braces, therapy, and over-the-counter medication to treat his possible carpal tunnel syndrome.  Gonzalez's physicians consistently noted that Gonzalez was likely to improve with conservative intervention.  Finally, despite his complaints at the November 2018 hearing of limiting pain, Gonzalez did not seek treatment after September 2018.  Gonzalez's medical records support ALJ's RFC determination with respect to his carpal tunnel syndrome.  *See Muniz v. Colvin*, No. EP-14-CV-122-ATB, 2015 WL 5062303, at *7 (W.D. Tex. Aug. 27, 2015) ("As the record contains few limitations and conservative treatment, the Court finds that [the claimant's] medical records . . . provide substantial evidence supporting the ALJ's RFC determination.").

***The State Agency Consultant Opinions.***  The ALJ is required to consider the opinions of state agency medical consultants and explain the weight assigned to them because they are "highly qualified experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1); SSR 96-6p, 1996 WL 374180, at *2 (Jul. 2, 1996); *see also Wycoff v. Berryhill*, No. 4:18-CV-885, 2019 WL 699995, at *4 (S.D. Tex. Feb. 19, 2019) (citations omitted).  Here, the ALJ considered the opinions of state agency medical consultants Dr. Scott Spoor and Dr. Randal Reid.  Tr. 16-17.

On October 6, 2017, Dr. Spoor opined that Gonzalez retained the ability to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; and stand, walk, and sit for about 6 hours in an 8 hour workday.  Tr. 57.  Dr. Spoor opined that Gonzalez had no postural, manipulative, visual, communicative, or environmental limitations.  *Id.*  On December 6, 2017, Dr. Reid gave an identical opinion of Gonzalez's ability, except he added postural limitations that Gonzalez could only occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance,

stoop, kneel, crouch, and crawl.  Tr. 82.  The ALJ's written decision makes clear she considered the opinions given by Dr. Spoor and Dr. Reid.  Tr. 16.  With respect to Dr. Spoor's opinion, the ALJ noted that the opinion was less persuasive and consistent with the longitudinal medical record because it omitted any postural limitations.  *Id.*  In contrast, the ALJ found Dr. Reid's opinion to be persuasive and consistent with the record and, therefore, assigned it greater weight.  *Id.*

Gonzalez argues that, although his carpal tunnel syndrome was mentioned in records created prior to Dr. Reid's opinion, the extent of his impairments caused by his carpal tunnel were not known to Dr. Reid at the time of his opinion.  ECF 11 at 7.  He suggests that medical records from appointments following Dr. Reid's opinion establish that he had greater restrictions due to his carpal tunnel syndrome than accounted for by Dr. Reid.  However, the ALJ clearly considered Gonzalez's carpal tunnel syndrome and the medical records following Dr. Reid's opinion in determining Gonzalez's RFC.  Tr. 16.  The ALJ weighed that evidence and determined Gonzalez's functional limitations are captured by the RFC she described in the written decision. The ALJ is only required to include in the RFC limitations that are supported by the record.  *See Elam v. Astrue*, Civil Action No. 4:11-3587, 2012 WL 5381781, at *7 (S.D. Tex. Oct. 31, 2012) (rejecting argument that the ALJ failed to account for an impairment in the RFC where the ALJ considered the evidence regarding the impairment and made an RFC determination that was supported by substantial evidence). Gonzalez's argument that the ALJ substituted her own lay opinion for that of medical experts actually complains about the ALJ's proper weighing of the medical evidence to determine Gonzalez's capacity for work.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) ("What Taylor characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.").

Further, Gonzalez cannot show any prejudice from the ALJ's reliance on the state agency consultant's opinion for her RFC determination.  Gonzalez argues by implication that had Dr. Reid considered his 2018 medical records Dr. Reid, and by extension the ALJ, would have reached a different conclusion.  Yet, as discussed above, the ALJ considered those records and concluded they do not support any additional limitations on Gonzalez's functional capabilities.  No diagnostic tests or other objective medical evidence in the record support additional functional restrictions.  *See Bentley v. Colvin*, Civil Action No. 3:13-CV-4238-P (BH), 2015 WL 5836251, at *12–13 (N.D. Tex. Mar. 5, 2015), *report and recommendation adopted as modified*, 2015 WL 5836029 (N.D. Tex. Sept. 30, 2015) (finding no error when the ALJ relied on a state agency medical consultant's opinion that predated some of the medical evidence in the absence of a showing that an updated RFC assessment would have included more limitations).

Moreover, Gonzalez cannot show prejudice because he has presented no medical evidence supporting any impairment involving his left hand.  The DOT job description relied upon by the vocational expert and cited in Gonzalez's summary judgment brief, DOT number 185.167-046 for retail store manager, does not include a requirement for *bilateral* handling and does not have a requirement for grasping, which is the specific limitation Gonzalez contends should have been included in his RFC.  ECF 11 at 7; s*ee Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (*SCO),* App. D (1993), *available at* www. westlaw.com (database SCODICOT); s*ee also Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000) (rejecting claimant's argument that both hands must meet the handling and fingering requirement in the *DOT* job description); *Ardoin v. Saul*, Civil Action No. 4:19-cv-02022, 2020 WL 2934814, at *8 (S.D. Tex. June 3, 2020) (rejecting claimant's argument that his left hand limitations precluded his

performance of the jobs identified by the vocational expert because the *DOT* did not require bilateral handling and fingering).

### 2. The ALJ's RFC determination is not inconsistent with her severity determination.

Gonzalez also argues briefly that the ALJ erred by finding at step two that Gonzalez had a severe impairment of carpal tunnel syndrome but failing to include a limitation in the RFC to account for carpal tunnel syndrome. ECF 11 at 7. However, "having a severe impairment is not a sufficient condition for receiving benefits under the Secretary's regulations," but "means only that [the] claimant has passed the second step of the inquiry mandated by the regulations." *Kozlowski v. Colvin*, No. 4:13-CV-020-A, 2014 WL 948653, at *5 (N.D. Tex. Mar. 11, 2014) (quoting *Shipley v. Sec. of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987)). "In other words, the consideration of whether a claimant's impairments are severe at Step Two is a different inquiry than an ALJ's assessment of the RFC." *Id.* at *5 (citations omitted). Therefore, the ALJ did not err by finding at Step Two that Gonzalez's carpal tunnel syndrome is severe but failing to include specific limitations in the RFC based on that impairment. *See id.* (finding an ALJ did not err by finding at step two that a claimant has a severe impairment of carpal tunnel syndrome but failing to include limitations in the RFC to account for that impairment).

### III. Conclusion

The ALJ did not err and substantial evidence supports the RFC determination. Therefore, the ALJ's decision on disability should be upheld. *See Greenspan v. Shalala*, 38 F.3d at 237 ("Substantial evidence supports the ALJ's decision to disregard the [treating] physician's conclusions. That basis is enough to survive [the Court's] review."); *see Chambliss v. Massanari*, 269 F.3d at 522 ("[W]hether an applicant is able to work despite some pain is within the province of the administrative agency and should be upheld if supported by substantial evidence.").

Gonzalez's Motion is **DENIED** and the Commissioner's decision denying benefits is **AFFIRMED**.

Signed on January 29, 2021 at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge